No. 19,159.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TREGO, *Appellant* and *Appellee*, v. T. B. HAYS et al., *Appellees* and *Appellants*.

SYLLABUS BY THE COURT.

1. COUNTY HIGH SCHOOL—*Equitable Title to Site in the County—Legal Title in Trustees.* Trustees of a county high school were appointed under a statute providing that they should select the best site obtainable without expense, the title to which should vest in the county. They selected a site, which was paid for by a popular subscription. The owner made a deed running to the trustees. An action was brought in behalf of the county, asking that it be decreed to have the full title. A decree was rendered declaring the county to be the equitable owner, but suffering the legal title to remain in the trustees. *Held*, that such decree should be affirmed.

2. SAME. The deed above referred to recited a part of the consideration to be "that the said county erect a building and maintain a county high school therein or revert to the original owner." A building was erected at a cost of $28,000 in which a high school has been maintained for several years. *Held*, that the grantors have no longer any interest in the property conveyed.

Appeal from Trego district court; JACOB C. RUPPENTHAL, judge. Opinion fied January 9, 1915. Affirmed.

*S. M. Hutzel*, county attorney, and *A. D. Gilkeson*, of Hays, for the Board of County Commissioners.

*Lee Monroe, James A. McClure, C. M. Monroe*, all of Topeka, and *I. T. Purcell*, of Wa Keeney, for T. B. Hays et al.

The opinion of the court was delivered by

MASON, J.: In 1904 a high school was established in Trego county under a special act (Laws 1903, ch. 473) making applicable thereto the provisions of the general law relating to counties having six thousand inhabitants or over (Gen. Stat. 1909, §§ 7765-7783). A board of trustees was chosen. T. B. Hays offered them a tract suitable for a site for the school for $1000. The board voted to accept it if it could be had without cost to the county. For the purpose of paying for the site a number of indviduals contributed to a fund which, including cash, promissory notes, and oral promises to pay, amounted to $1600, equal to the full value of the property, Hays contributing $200 of it. Hays and his wife accepted the results of this subscription and executed a deed to the trustees, which was in the usual form, excepting that the portion reciting the consideration was made to read as follows: "In consideration of the sum of one dollar and the further consideration that the said county erect a building and maintain a county high school therein or revert to the original owner and 0⁰⁄₁₀₀ dollars." A building worth $28,000 was erected, in which the school has ever since been maintained. The present action was brought in behalf of the county, asking that the deed be canceled and that Hays and his wife be required to execute a new conveyance to the county, and that they and the trustees be barred from all interest in the land. The trial court entered a decree excluding Hays and his wife from any interest in the property, and declaring the county to be the equitable owner, but leaving the legal title in the trustees. Appeals are taken both by the county and by Hays and his wife.

The statute (Gen. Stat. 1909, § 7773) provides that the board of trustees shall select "the best site that can be obtained without expense to the county, and the title thereof shall be vested in the said county." The county maintains that in view of this provision the full title should be vested in it. We regard the judgment ren-

dered as a complete protection to the county. It is declared to be the equitable or beneficial owner of the property, and no substantial injury or inconvenience can result from the fact that the trustees are suffered to retain the naked legal title. The public is the actual owner, and it is not very material in what officers the formal title rests.

Hays and his wife contend that they should not have been decreed to have no interest in the property, because, if a high school should cease to be maintained upon it, it would revert to them, or their successors, by virtue of the provisions of the deed. The soundness of their contention turns upon whether the phrase "erect and maintain a county high school therein" should be interpreted as though it read "erect and forever maintain," giving the clause in which it occurs the effect of a provision that the title should revert to the grantor if the maintenance of a high school upon the property should cease. They place some reliance upon the case of *Randall v. Wentworth,* 100 Maine, 177, 60 Atl. 87. There a deed to a Trotting Park Association contained this provision: "The above named Association to erect and maintain a fence around the remainder of the lot, of which the above mentioned ten acres was a part, and lying between said Association's track and the county road, said Association or their successors failing to erect and maintain a suitable fence this instrument becomes null and void." (p. 178.) The association built a fence, but after a period of some ten years ceased to maintain it, and this condition continued for five years. The title was held to have reverted to the grantor. In the circumstances stated a purpose to require the permanent maintenance of the fence, under the penalty of a forfeiture of the property by its discontinuance, is reasonably clear. But in the present case the language chosen, in view of the entire situation, seems rather to impose the condition that a school shall be established upon the tract, and to vest a complete title in the public upon the fulfillment of that condition. The building has

been erected and the school is established and maintained, not colorably merely, but in obvious good faith as a permanent institution. A note on the general subject includes cases holding that a condition for the "permanent" location of a school is complied with by its maintenance for a reasonable period. (Note, 44 L. R. A., n. s., 1220, 1225.) As suggested in the note referred to (p. 1221) language providing for a forfeiture of title is construed strictly against the grantor. In a case which illustrates the general rule of interpretation, and in which the facts are somewhat analogous to those here. presented, a deed contained this provision: "The above ground is deeded to the State of Indiana expressly for the use and purpose of depot grounds for the Madison and Indianapolis railroad. Now, therefore, be it known, that in case the State of Indiana shall fail to erect buildings and occupy said ground for the use and purpose above mentioned, then and in that case the above specified ground shall revert back to the donors." (*Jeffersonville, Madison and Indianapolis R. R. Co. et al. v. Barbour et al.*, 89 Ind. 375, 376.) A depot was maintained on the tract conveyed for about thirty years, and then removed. In an action to declare the title forfeited the court said:

"In determining whether a condition subsequent in a deed has been broken or not, construction is required in nearly every case. But little assistance can be had from examining other cases, except to ascertain rules for interpretation. Each case differs so widely from all others that even rules of construction can not be wholly depended upon. The application of good sense and sound equity are as much to be relied upon as subtle and artificial rules of construction. The point, of course, to be arrived at in every case, is to ascertain the intention of the parties. And we may suppose in this case, from the language of the deed and the surrounding circumstances of the transaction, . . . that the grantors' object in the conveyance was satisfied in the occupancy of the premises by the railroad, for depot purposes, for a period of time nearly equal in duration to the average of human life." (p. 379.)

The judgment is affirmed.