No. 38,033

WAYNE WING, *Appellee,* v. MID-CONTINENT SEEDS, INC., *Appellant.*

(225 P. 2d 78)

Opinion filed December 9, 1950.

*James P. Mize,* of Salina, argued the cause, and *C. L. Clark* and *Jason K. Yordy,* both of Salina, were with him. on the briefs for the appellant.

*John Q. Royce,* of Salina, argued the cause, and *LaRue Royce, E. S. Hampton, H. H. Dunham, Jr.,* and *H. G. Engleman,* all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action wherein plaintiff sought recovery for the value of seed sold the defendant. From a judgment in favor of the plaintiff the defendant appeals.

The petition alleged that on January 19, 1949, the plaintiff sold defendant approximately 400 bags of Atlas Sorgo weighing 40,000 pounds, for $1,700, the sale being confirmed in a written document later mentioned; that on March 1, 1949, plaintiff notified the defendant the seed had been duly inspected and sealed in bags by the Kansas Crop Improvement Association and that it had been ready for delivery for sometime but defendant failed to pick up and transport the seed and without fault of plaintiff the seed was destroyed by fire; that demand for payment had been made on defendant and refused. The written confirmation of purchase, a portion of which is pleaded, was later received in evidence. To avoid repetition we here refer to the entire document. The confirmation is on a printed form entitled "Confirmation of Purchase," shows in its caption "Mid-Continent .Seeds, Inc., Salina, Kansas" as well as dates, purchaser and other information. At the bottom are printed provisions as to weights and grades, the right of the buyer to extend time of shipment and other provisions including "Above seed to be nucrop normal germination and comply with existing seed regulations." At the bottom is a form for signature by the purchaser, which is executed by M. E. Hurlburt, concededly the defendant's manager. Appropriate blanks on the form are filled in to show date of purchase to be "1-19-49" when ship "Middle of Feb., 1949" and that the

corporation had purchased of "Wayne Wing" Minneapolis, Kansas, "F. O. B. Farm" approximately 400 bags, 40,000 pounds, "Cert. Atlas Sorgo" at $4.25 per cwt. "99 Pure 92 Germ. Noxious Free."

Defendant's answer was a general denial, a denial that the alleged written contract set forth in the petition was complete, and a denial that plaintiff had performed or that the defendant had breached the contract.

The abstract does not include any reply which may have been filed.

A trial was had. After both parties had rested, defendant moved for an instructed verdict, the motion being denied. The cause was submitted to the jury under written instructions, to two of which defendant objected. The jury returned a verdict in favor of the plaintiff and answered special questions, later mentioned, but which need not be set forth. After the verdict was returned defendant moved for judgment upon the answers to the special questions, moved to have the answers to certain questions set aside and moved for a new trial. These three motions were denied and judgment was entered on the verdict. The defendant appeals.

Although in its abstract the appellant specifies error in twelve particulars, in its brief it presents only two general questions. Referring to four specifications, *i. e.*, that the trial court erred (*a*) in failing to sustain its demurrer to plaintiff's evidence; (*b*) in failing to sustain its motion for a directed verdict; (*c*) in failing to sustain its motion for judgment on the answers to special questions, and (*d*) in entering judgment upon the verdict, it contends first that the trial court erred in refusing judgment for it, its argument being presented under three subdivisions. Referring to its specification that the trial court erred in giving instruction No. 5 to the jury, it argues the instruction was wrong as a matter of law, its argument being presented under three subdivisions. Its other specifications of error that the trial court erred in the admission of testimony, in refusing to set aside the answers to five special questions, and in denying a new trial, except that as to the latter it is mentioned in presenting the second general question to the extent later treated, are not discussed and are considered as abandoned. (See *e. g. Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, 139 P. 2d 859.) As to a new trial the appellant not only makes no contention for a new trial but does ask that the judgment rendered be reversed with directions to render judgment for the appellant. Strictly speaking, trial errors which should have been presented by the motion for a

new trial are not before us for consideration with the exception of the instructions to the jury.

Under its argument that the trial court erred in refusing to enter judgment in its favor appellant does not separately present and argue the ruling on its demurrer to the evidence or on its motion for a directed verdict. It does make a statement of facts, favorable to itself, which is the basis for its contention of error. Under the law however, plaintiff is entitled to an interpretation of the evidence favorable to him, and such an interpretation discloses the following: In 1948 plaintiff had raised a crop of Atlas Sorgo seed and sent a sample to the Kansas Crop Improvement Association which made tests for germination and purity and issued its certificate. Plaintiff offered the seed for sale to defendant, which agreed to purchase 40,000 pounds. Inasmuch as plaintiff had no delivery equipment for that quantity the purchaser was to take delivery at plaintiff's farm. The confirmation of purchase heretofore noted was prepared and executed by the defendant and given to the plaintiff. At the time the sale was made on January 19, 1949, it remained for plaintiff to have the seed cleaned and placed in bags for delivery by the "middle of Feb. 1949." He had some difficulty getting cleaning equipment, informed defendant and was given such time as he needed. On February 17, 1949, the work of cleaning the seed and putting it in bags was completed, there being a total of 476 bags filled, and on February 28, 1949, the bags of seed were inspected and sealed by the Kansas Crop Improvement Association. A part of the bagged seed was stored in a metal bin and a part in a close-by building. On March 1, 1949, plaintiff went to the defendant's office and notified it that the seed sold to it was ready for delivery. At that time defendant notified plaintiff it had no place to put the seed. Defendant made no effort to get the seed and its value as seed was destroyed by a fire which occurred on plaintiff's farm on March 20, 1949. We need not detail other evidence which tended to show there was an agreement, or that there was not, that an additional test of the seed should be made or that defendant would send its trucks for the seed on March 22, 1949. The showing made by the plaintiff's evidence was sufficient to make a prima facie case and the trial court did not err in ruling on the defendant's demurrer to plaintiff's evidence nor in refusing to direct the jury to render a verdict in defendant's favor.

Appellant's argument that the trial court erred in refusing to enter judgment for the defendant is predicated on a contention that the court had held that the title to the seed was in the plaintiff at all

times until it was loaded on defendant's truck for delivery to the defendant; that loss followed the title and as plaintiff held title at the time of the fire the loss was his and not the defendant's. Whether procured at the request of the defendant or not does not appear from the abstract, but among other instructions given was the following:

"4. You are instructed that the written agreement concerning the certified Atlas Sorgo involved in this case expressly contains the provision 'F. O. B. Farm.' The plaintiff concedes by his amended petition herein that this provision is included in his contract with Mid-Continent Seeds, Inc. You are instructed that this provision 'F. O. B. Farm' has a well defined business meaning and that it means in this case that Wayne Wing agreed to deliver the Atlas Sorgo to Mid-Continent Seeds by placing the Atlas Sorgo 'free on board the carrier or truck at his farm' for shipment to Mid-Continent Seeds, Inc. *You are further instructed that as a matter of law the title to this Atlas Sorgo remained in Wayne Wing at all times until he placed the Atlas Sorgo free on board such carrier or truck for shipment at his farm.*" (Emphasis supplied.)

The appellee objected to the instruction on the ground it did not state the law applicable to the case and failed to consider the intentions of the parties as to the passage of title. Appellant directs attention to the fact that appellee filed no cross-appeal and argues that the instruction became the law of the case and calling attention especially to the emphasized portion, says that it being the law of the case, under the undisputed fact that the seed was not loaded before the fire destroyed its value, a judgment for it was compelled. The contention made is too broad. (See *Davis v. Threlkeld*, 58 Kan. 763, 51 Pac. 226.) Moreover, it has been held repeatedly that instructions must be considered as a whole and all must be considered to determine whether the theory and contentions of each party are presented. An erroneous instruction does not require reversal if all of the instructions, considered together, substantially state the law of the case. See the cases set forth in West's Kansas Digest, Trial, § 295, and Hatcher's Kansas Digest, Trial, § 186. Instruction No. 4, in part, sets forth the appellant's theory of nonliability, but instruction No. 5 to which appellant objected, a matter which is considered later, sets forth appellee's theory why appellant was liable.

In its brief, appellant directs attention to authorities dealing with the question as to who must bear the loss where, after a contract of sale has been made, the property is accidentally lost, and indicating that the ultimate determination of the question depends upon whether title has passed, since it is the general rule that in the ab-

sence of a contrary intention or agreement the risk follows the title—that if the title has not passed the loss falls on the seller, if it has passed the loss is that of the buyer, citing 46 Am. Jur. 463, *Hunter v. Kramer*, 71 Kan. 468, 80 Pac. 963, and cases from other jurisdictions applying the rule.

Appellee directs our attention to many of our cases holding that in such cases the primary consideration in determining whether title has passed is the intention of the parties, and if it was the intent of the parties to the contract that title should presently pass, that intent governs, citing *Howell v. Pugh*, 27 Kan. 702; *Kingman v. Holmquist*, 36 Kan. 735, 14 Pac. 168; *Barber v. Thomas*, 66 Kan. 463, 71 Pac. 845; *Stewart v. Produce Co.*, 88 Kan. 521, 129 Pac. 181; *Ely v. Gas Co.*, 99 Kan. 236, 161 Pac. 649; *Arkansas River Gas Co. v. Molk*, 130 Kan. 30, 285 Pac. 561; and *Kennedy v. Glen Cove Mut. Ins. Co.*, 154 Kan. 327, 118 P. 2d 591. And he also directs special attention to *Arkansas River Gas Co. v. Molk*, supra, as holding that in the sale of a number of articles of a definitely described lot, which are in a deliverable condition and nothing remains to be done, a separation is not essential to a passing of title in the absence of circumstances indicating a contrary intent, and to *Stewart v. Produce Co.*, supra, where a considerable review of the authorities dealing with passing of title was made.

We think it unnecessary to take up and discuss the authorities cited in support of the above propositions for generally speaking the rules stated are correct. It is true, as appellant contends, that appellee did not testify as to his intention when the title should pass, but it is doubtful that such a statement would have been competent. As to when title to the seed would pass was not explicitly fixed by the "Confirmation of Purchase" it must be deduced from all of the evidence, and, under the circumstances here, was a question for the jury. On its face the confirmation of purchase would indicate a passing of the title as of its execution, or not later than "middle of Feb. 1949" for there is nothing in that document to indicate that the seed was not in bags and ready for delivery on the date of its execution. The confirmation does not positively disclose, although the evidence does, that appellant was to come to appellee's farm and get the seed at the latter date. Limited to that showing it would appear that it was the intention the delivery should then be made and title should then pass. By agreement, however, the time to have the seed bagged and ready was extended, it was bagged on February 17, it was inspected, passed

and sealed February 28, and on the next day the appellant was notified that appellee had fully performed on his part. It is true there was dispute in the evidence as to who was to load appellant's truck, once it got to appellee's farm, as to whether subsequent tests were to be made of the seed, and as to whether there was an agreement that appellant would be there on March 22, but the jury, by its verdict, resolved the question in favor of the appellee, and no answer to any special question was to any contrary effect.

Appellant's further argument on its first general question is premised on its assertion that the trial court by instruction No. 4 had advised the jury as a matter of law the title to the seed had not passed from the plaintiff before the fire and that such a ruling was supported by the evidence, and on that premise it is argued at length that the trial court was correct in so ruling. In our judgment the premise is not sound. The only way in which the trial court could have made such a ruling as a matter of law would be for the reason the confirmation of purchase settled the matter. It has been stated heretofore it did not. In the circumstances of this case where it could not be said as a matter of law from the confirmation of purchase that title had passed, it makes no difference that there was some evidence warranting a conclusion the ruling was correct as a matter of fact. It was the function of the jury from all of the evidence, some of which was in conflict, to determine the fact. As construed by the appellant the instruction was erroneous, but it was favorable and not prejudicial to the appellant. While the instruction, and others, could have been better stated to set forth the theories of liability and nonliability of the parties, we are of the opinion, as is shown more fully later, that taking all of the instructions together, the trial court was attempting to advise the jury as to those theories, and that the emphasized portion of instruction No. 4 as quoted above should not be isolated, as contended for by appellant, but should only be considered as a part of all of the instructions. So considered, and by reason of its ruling we must assume they were so considered by the trial court, the trial court did not err in refusing to enter judgment for the appellant.

The second general question presented by the appellant is whether the trial court erred in its instruction No. 5. As has been noted, all of the instructions are to be considered together.

Briefly stated, by one instruction the court told the jury that plaintiff claimed he had sold the seed and on March 1, 1949, had notified

the defendant that the seed had been duly inspected and sealed in bags by the Kansas Crop Improvement Association and that it was ready for delivery pursuant to the contract; that the defendant neglected to get the seed and without fault of the plaintiff it was destroyed. Under another instruction the court advised the jury of the defendant's denial that plaintiff had so performed and that it denied any breach of the contract. The court then informed the jury that if the parties made no provision regarding time of payment, that a cash sale was intended and that payment was to be made on delivery and that it took both delivery of the goods and payment to transfer the title from the seller to the buyer. Then follows instruction No. 4 heretofore quoted. Instruction No. 5, of which appellant complains, was as follows:

"5. If you find and believe from a preponderance of the evidence that the seed sold by plaintiff to defendant on January 19, 1949, was to be cleaned and bagged by the plaintiff at his farm and was to be there picked up by the defendant's truck, and if you find that plaintiff cleaned the seed and placed it in bags within the time allowed by the contract or by any extensions made by the defendant, and that the seed was of the kind and quantity specified in the contract so that all that remained to be done was for the defendant to send its trucks and pick up the bags at plaintiff's farm, and that plaintiff notified the defendant thereof in time reasonably sufficient for defendant to remove the seed before the same was destroyed by fire as shown by the evidence, but that defendant failed so to do, then your verdict should be for the plaintiff . . . but if you do not so find, your verdict should be for the defendant."

Appellant contends that the quoted instruction is contrary to and inconsistent with other instructions, is misleading and submits to the jury matters which had been decided by the court as a matter of law and therefore was highly prejudicial to appellant. Appellant's argument is divided into three parts. It is first argued the instruction is wrong as a matter of law because it does not mention the matter of the title to the seed at the time of the fire, nor matters of selection, appropriation, acceptance and delivery. This argument mingles an assertion that the title had been determined to be in the plaintiff with statements that certain evidence was uncontradicted and that the jury was completely misled. We need not go into detail. Appellant's contention as to title to the seed has been treated heretofore in this opinion. No purpose will be served by detailing evidence to demonstrate there was dispute. In instructing the jury, the trial court did not need to make specific reference to the evidence. There was no dispute in the evidence as to the cleaning of the seed, that it had been placed in bags and sealed and certified, and there was no occasion to

instruct the jury on those particular things or if there was, there is no showing that any such a request was made nor that in any objection such a matter was mentioned.

It is next contended the jury was permitted to find an act of the defendant constituted a breach of the contract which the undisputed evidence shows was not a breach. The claimed undisputed evidence is that additional tests of the seed were to be made and that defendant was not to take the seed until March 22. We cannot agree with that premise. Inherent in the case as a whole was whether there was an agreement for additional tests and whether appellant was at fault in not getting the seed within a reasonable time after March 1, 1949. Also involved was whether appellee had ever agreed to the March 22 date of delivery. While there is evidence which would have warranted a finding there were to be the additional tests and that appellee had consented to the March 22 delivery date, there was contrary evidence, and it may not be said the jury was advised to decide a matter concerning which there was no dispute.

As a third subdivision of the second general question, appellant presents an argument that if its failure to get the seed before March 20, 1949, the date of the fire, was a breach of the contract, it is not liable, as only such damages are recoverable as are the natural consequence of its breach and were within the contemplation of the parties when they made the contract and that the proximate cause of the destruction of the seed was the fire and the alleged failure to send out trucks and get the seed was only a remote cause and, inferentially, not a natural consequence of the breach. Our attention is directed to authorities dealing with consequential damages. At the time the instruction was given the jury had before it for consideration evidence that appellee had sold the seed to appellant and that it was necessary that the seed be cleaned, bagged, inspected and sealed before delivery; that all of this had been done and the appellant notified on March 1 that appellee had fully performed and the seed was ready for delivery. If the jury accepted those things as the facts then it could assume under the instructions given, that if appellant did not send out its trucks and get the seed within a reasonable time that title had passed and the seed was left where it was by appellant and at its own risk. Any loss consequent on its so doing would be its loss and not that of appellee. We do not believe that for any reason asserted by the appellant the jury was misled in resolving the issue.

We note that throughout the brief reference is made to much of the evidence introduced at the trial but in view of the manner in which appellant has presented its appeal we have not found it proper to comment thereon. It may be said in passing, however, that comment on and consideration of it would lead to no different result. We have not set forth the special questions and the answers of the jury thereto as, under the questions presented there can be no question as to their being supported by the evidence. Our examination shows the answers are not inconsistent with the general verdict.

The judgment of the trial court is affirmed.

PARKER, J., dissents.